Eva D. Haas, Appellant, *v.* Simon Haas, Respondent.

Argued March 3, 1948; decided June 11, 1948.

*Julius Weiss* for appellant. I. A separation agreement which relieves the husband from his liability to support his wife for reasons other than marital misconduct is void. (*Querze* v. *Querze,* 290 N. Y. 13; *Matter of Rhinelander,* 290 N. Y. 31; *Kyff* v. *Kyff,* 286 N. Y. 71; *Jackson* v. *Jackson,* 290· N. Y. 512; *Tirrell* v. *Tirrell,* 232 N. Y. 224; *Dworkin* v. *Dworkin,* 247 App. Div. 213; *Goldman* v. *Goldman,* 282 N. Y. 296; *Garlock* v. *Garlock,* 279 N. Y. 337; *Leeds* v. *Leeds,* 265 App. Div. 189; *Moore* v. *Moore,* 59 N. Y. S. 2d 22.) II. Special Term erred in holding that the burden of proof rested upon the wife to establish " that she was not engaged in a retail business ". Since the husband claimed an exemption from the obligation to support his wife, the burden rested upon him to prove his affirmative defense. (*Blunt* v. *Barrett,* 124 N. Y. 117.)

*Victor Lehman* for respondent. The subsisting separation agreement meets the test that adequate provision for support must exist, and does not offend section 51 of the Domestic Relations Law. (*Kyff* v. *Kyff,* 286 N. Y. 71; *Almonte* v. *Almonte,* 259 App. Div. 311; *Moore* v. *Moore,* 59 N. Y. S. 2d 22.)

FULD, J. The parties to this separation suit, married in 1924, separated early in 1945, and in May of that year entered into an agreement pursuant to which the husband was to pay the wife $100 a week for her maintenance and support (paragraph fourth). It was further agreed that " in the event the Wife shall engage in a retail business in the City of New Rochelle, Westchester County, New York, similar to that conducted by the Husband under the name of Haas Linen Shop, either as owner, part owner or stockholder, her right to alimony shall be suspended so long as she is so engaged " (paragraph eighth).

In July of 1945, Greentree Linens, Inc., of which the wife's sister was president and the latter's husband, treasurer, was organized to carry on the same sort of business in New Rochelle as the husband conducted; the wife was employed by the corporation as manager at a salary of $60 a week and, although she does not appear to have been stockholder, director or officer, apparently ran the enterprise. The husband discontinued his weekly payments for her support. The wife commenced this suit for a decree of separation based upon charges of nonsupport — with which this appeal is concerned — and of cruelty. The husband defended on the ground that, by reason of the provision above quoted, he was entitled to terminate those payments without being charged with nonsupport.

The courts below have dismissed the complaint, holding that the clause relied upon is valid and enforcible. We reach a contrary conclusion. Whether or no it may be said that plaintiff's activities and status as manager of the corporation brought her within the fair scope and intendment of the terms, " owner, part owner or stockholder ", it is our judgment that the eighth paragraph offends against the public policy of the State and is illegal.

The obligation of the husband to provide for his wife springs from the marital relationship itself, and, while perhaps not susceptible of exact definition or precise measurement, requires the husband to support her in conformity with his condition and situation in life. (See *Garlock* v. *Garlock*, 279 N. Y. 337, 340–341; *Rodgers* v. *Rodgers*, 229 N. Y. 255.) That duty, the Domestic Relations Law makes clear, may be neither avoided nor diminished. Section 51, insofar as pertinent, provides that " a husband and wife cannot contract to alter or dissolve the marriage or to relieve the husband from his liability to support his wife." By such statutory prohibition, husband and wife are stripped of power to relieve the former of his obligation; both are rendered incapable of bargaining away the woman's right to the man's support.

The broad foundation in which the statutory rule is imbedded is the uncompromising determination of the State to preserve the important incidents of the marriage relationship during its continuance whatever the contrary sentiments of the parties themselves may be. This court, pointing to the State's deep

interest in the matter, recently declared that " every agreement between husband and wife must be viewed in the light of this continuing interest of the State." (*Kyff* v. *Kyff*, 286 N. Y. 71, 74.) They may, if separated, enter into an agreement " for regular, substantial, periodic payments " to the wife as a measure of the husband's continuing obligation to support her. (See *Jackson* v. *Jackson*, 290 N. Y. 512, 516; *Goldman* v. *Goldman*, 282 N. Y. 296, 300–301.) But, such an agreement aside, contracts which entirely or partially exonerate the husband or which " release " him from his obligation or " diminish it " are condemned as void. (*Goldman* v. *Goldman*, *supra*, p. 299; see, also, *Jackson* v. *Jackson*, *supra*, pp. 516–517; *Matter of Rhinelander*, 290 N. Y. 31, 37; *Garlock* v. *Garlock*, *supra*, p. 340; *Manufacturers Trust Co.* v. *Gray*, 278 N. Y. 380, 386; *Tirrell* v. *Tirrell*, 232 N. Y. 224; *Third Nat. Bank* v. *Guenther*, 123 N. Y. 568, 576; *Leeds* v. *Leeds*, 265 App. Div. 189, 191; *Rubinfeld* v. *Rubinfeld*, 264 App. Div. 888, appeal dismissed 289 N. Y. 838; *Mabbett* v. *Mabbett*, 197 App. Div. 654, 655; *Stone* v. *Stone*, 173 Misc. 774; *Moore* v. *Moore*, 59 N. Y. S. 2d 22, 23.)

This court has ever been alert " to enforce that statute [§ 51] and to strike down any agreement fairly within its intendment." (*Matter of Rhinelander*, *supra*, p. 37; cf. *Weiman* v. *Weiman*, 295 N. Y. 150, 154.) However artful the terms of the agreement, however veiled the design to terminate the husband's obligation, contrary to the mandate of section 51, the attempts are doomed to failure. Thus, a husband may not purchase enduring exemption either by payment of a lump sum (*Jackson* v. *Jackson*, *supra*; pp. 516–517; *Kyff* v. *Kyff*, *supra*, p. 74) or by payments of installments over a limited period of years. (*Rubinfeld* v. *Rubinfeld*, *supra*.) And an agreement will be stricken that either calls for support only until a child of the marriage becomes twenty-one or sooner marries or dies (*Leeds* v. *Leeds*, *supra*); or excuses such support " due to the fact " that the wife " is gainfully employed and agrees * * * to maintain and support herself " (*Moore* v. *Moore*, *supra*); or requires the wife to " assume and pay all the expenses of supporting the family." (*Third Nat. Bank* v. *Guenther*, *supra*, at p. 574.)

Turning to the provision upon which defendant relies, there can be no doubt that it was designed to accomplish what sec-

tion 51 forbade. Whatever may be the amount which represents the fair measure of support owed by husband to wife in any particular case, it is evident that its payment may not be made to depend entirely upon the subsequent conduct of the wife, at least when not fairly or reasonably related to the marriage relationship. (Cf. *Duryea* v. *Bliven,* 122 N. Y. 567.) In the present case, defendant was to be relieved from all liability to support plaintiff if she engaged in the retail linen business in New Rochelle, and that immunity of his was to endure, perhaps for life, regardless of how little his wife realized from the business. His freedom from her competition, the agreement indicates, was valuable to him. However, it could not have been so valuable as to equal the amount of support agreed upon, for in such a case, it would be necessary to indulge the conclusion — without warrant — that the amount thus agreed to be paid *qua* alimony was actually for the wife's refraining from competing; if that were so, the agreement would be illegal upon the ground that it failed to provide any measurement of defendant's obligation of support. On the other hand, if freedom from such competition was worth less than $100 a week, the offending provision demonstrates an intention that defendant should be released not only from the payment agreed upon to induce his wife not to compete, but, in addition, from the payment agreed upon for her support. That obviously may not be done.

The parties, we assume, might have fixed an adequate measure of support and then added a condition providing for extra payments if the wife refrained from engaging in a competing enterprise, for then there would have been no agreement absolving the husband from his obligation. As written, however, the provision relieved defendant of his duty to support plaintiff and violated both the letter and spirit of section 51.

The eighth paragraph of the agreement was, therefore, void and, since it does not afford the husband a defense, dismissal of the complaint could not be predicated upon that provision. It is not now necessary either to consider or pass upon the effect which that clause has upon the agreement as a whole or upon any other of its provisions.

The judgments should be reversed, and a new trial granted, with costs to the appellant in all courts to abide the event.

DYE, J. (dissenting). I dissent for the reason that the covenant in the separation agreement under review, providing for suspension of alimony payments during such time as the wife shall engage in the retail linen business in New Rochelle, in competition with her husband " either as owner, part owner or stockholder " is not unreasonable and cannot, under the circumstances presented here, be regarded as a device to relieve the husband of his duty to support the wife in contravention of the statute (Domestic Relations Law, § 51).

The agreement provided for a property settlement under which the husband conveyed to the wife his interest in real property owned as tenants by the entirety, the household furnishings, a Ford station wagon, cash and securities in a jointly held safe deposit box, maintenance by the husband of a policy of insurance on his life in the amount of $10,000 for the benefit of the wife, and to pay alimony in the amount of $100 weekly. The terms also included mutual releases and the wife, for.her part, covenanted not to make any claim or bring any suits against her husband for maintenance and support so long as the husband kept and performed the covenants and conditions taken by him, in consideration of which she released all interest in the retail linen business conducted by her husband under the style and name of " Haas Linen Shop ", with the specific understanding that if she thereafter engaged " in a retail business in the City of New Rochelle, Westchester County, New York, similar to that conducted by the Husband under the name of Haas Linen Shop, either as owner, part owner or stockholder, her right to alimony shall be suspended so long as she is so engaged."

The wife was thoroughly familiar with all phases of the linen business having assisted her husband throughout the married years in the operation of his store. Shortly after the execution of the separation agreement the husband was informed by his landlord that his store lease would not be renewed at its expiration on July 31, 1945, as the premises had been leased to one Greentree who, by the way, is the wife's brother-in-law. At the trial the wife admitted that she knew at and prior to the time of the execution of the separation agreement about Greentree's efforts to get the lease away from her husband but had kept such information from her husband. The husband was

evicted in September, 1945, and moved his business to another location in New Rochelle. Forthwith Greentree Linen Shop, Inc., opened a retail linen store in the old location, Greentree and his wife being the officers and stockholders, but took no active part in the business, and the plaintiff wife being in charge as general manager. Faced with this actuality the husband, relying on the covenant, suspended the weekly alimony payments of $100. The wife then brought the within action for separate maintenance and support alleging abandonment, cruel treatment occasioned by open and notorious adultery and failure to support. The husband interposed general denials and as an affirmative defense offered the separation agreement. The trial court found that the allegations of the complaint had not been sustained by the proof and dismissed the complaint making findings to the effect that the separation agreement was valid, that the defendant husband was complying with its terms and that there was no abandonment or failure to support and that the plaintiff wife had also failed to establish her allegation of cruelty based on open and notorious adultery.

These findings, I am satisfied, were amply supported by the evidence and have been affirmed by the Appellate Division, except for its modification of the finding that the wife was engaged in the linen business within the intent and meaning of the separation agreement by the addition of the words " and was so engaged at the time of discontinuance of weekly payments by the husband " (272 App. Div. 822).

There is and, of course, can be no question as to the interest of the State in the economic aspects of the marriage relation. While the husband may not by contract be relieved of his duty to support the wife, the husband and wife may by contract agree upon an amount which the husband shall pay the wife in satisfaction of his obligation. Such agreement, unless unreasonable (*Dolan* v. *Dolan*, 296 N. Y. 860) will be enforced (*Goldman* v. *Goldman*, 282 N. Y. 296; *Winter* v. *Winter*, 191 N. Y. 462), and will bar the maintenance of an action for support (*Oatman* v. *Oatman*, 267 App. Div. 805).

Here the measure of support agreed upon by the parties is not challenged as unreasonable, unfair or inadequate, the sole claim being that the covenant allowing for suspension of alimony payments while the wife engaged in a competing business is

null and void and unenforcible because it contravenes the public policy (Domestic Relations Law, § 51). The contrary seems clear and indisputable. The agreement, by its specific terms, does not relieve the husband of his duty to support but rather fixes his obligations which he is bound to meet. The covenant goes to the measure of the support. The wife controls the situation at all times for by her voluntary decision she may determine when she will take the payments or permit their suspension by engaging in competing business. The husband has nothing to say about it. This involves no problem of public policy as to her support for at any time that she desires she may stop competing with her husband and resume receipt of her alimony payments which he is bound to pay. Under such circumstances the covenant is entirely reasonable and should be enforced.

The judgment of the Appellate Division should be affirmed.

LOUGHRAN, Ch. J., LEWIS and DESMOND, JJ., concur with FULD, J.; DYE, J., dissents in opinion in which CONWAY and THACHER, JJ., concur.

Judgments reversed, etc.