ESTATE OF LOUIS FABRIKANT, DECEASED, MORTON BAUM, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87002. Filed January 24, 1963.

*David Oppenheim, Esq.*, for the petitioner.
*Henry G. Nagel, Esq.*, for the respondent.

OPINION.

OPPER, *Judge:* We have held on several occasions that payments by a husband in discharge of his obligation to support his divorced wife are not gifts under the gift tax statute. *Herbert Jones*, 1 T.C. 1207 (1943) : *Edmund C. Converse*, 5 T.C. 1014 (1945), affd. 163 F. 2d 131 (C.A. 2, 1947) ; *Clarence B. Mitchell*, 6 T.C. 159 (1946). Respondent's contention here is that these cases are inapplicable because for the years in question there was neither a formal agreement nor a court decree requiring the payments which were actually made, and that hence they were gifts. The facts are unusual, but we think respondent misconceives their effect upon the required conclusion.

The payments in question were continuations of those previously made during the minority of the couple's son and consequent upon a divorce duly applied for and granted. Under the original agreement the payments were to cease upon the son's majority; but, apparently with no further formal agreement or supplemental adjudication, the amounts in controversy continued to be transmitted monthly from the ex-husband to his divorced wife. We think our concern is to determine whether there was a subsisting legal obligation resting upon the husband, the discharge of which was accomplished by these monthly payments, and that the test of the existence of such a legal obligation is what would have happened in a lawsuit, whether the parties actually resorted to litigation or not. It is the existence of the obligation, irrespective of how it was enforced, by which we must be guided.

In *Clarence B. Mitchell, supra* at 165, where we were dealing with a lump-sum settlement of the husband's obligation of support, we said:

By obtaining the discharge of this legal obligation [the continuing duty of support], the petitioner was relieved of making continuing cash expenditures for years to come. This, in our opinion, constitutes consideration in money or money's worth within the meaning of the statue * * * and in no sense represents a gift.

And in *Herbert Jones, supra* at 1211, "an existing legal liability on the part of the husband to the wife was settled. The mere form of the transaction under which that liability is satisfied is not controlling."

Whether a legal obligation of support existed, and, if so, in what amount, might well be a difficult or even impossible problem in the absence of judicial determination, especially with the burden resting on the taxpayer as to legal as well as factual issues. *Helvering* v. *Fitch*, 309 U.S. 149 (1940) ; *Helvering* v. *Leonard*, 310 U.S. 80 (1940).

"It is a far cry, however, from such a transaction to that presented in this record, where the transfer was in settlement of a present and existing liability." *Herbert Jones, supra* at 1210.

Here, it seems sufficiently clear what the decision of a local court would necessarily provide so that we feel secure in holding that such a legal obligation did actually exist, that decedent was under a continuing legal liability to contribute in not excessive amounts to his wife's support, and that it was necessary for him to make the payments which he did in order to discharge it.

In the first place, any agreement between decedent and his divorced wife that the alimony was to terminate at a fixed time was completely void. *Kyff* v. *Kyff*, 286 N.Y. 71, 35 N.E. 2d 655 (1941). No action on the part of the wife was necessary to annul it. *Leeds* v. *Leeds*, 284 App. Div. 869, 134 N.Y.S. 2d 123 (1954). Nor does it signify that she would not necessarily become a public charge. *Blaufarb* v. *Blaufarb*, 9 App. Div. 2d 86, 191 N.Y.S. 2d 785 (1959).

The obligation of the husband to provide for his wife springs from the marital relationship itself, and, while perhaps not susceptible of exact definition or precise measurement, requires the husband to support her in conformity with his condition and relation in life. * * *

* * * contracts which entirely or partially exonerate the husband or which "release" him from his obligation or "diminish it" are condemned as void.

*Haas* v. *Haas*, 298 N.Y. 69, 80 N.E. 2d 337, 338 (1948). And there can be no question that the New York court which granted the divorce had at all times inherent jurisdiction to modify its decree subsequently as equity might require, including any provisions for the support of the divorced wife. *Hoops* v. *Hoops*, 292 N.Y. 428, 55 N.E. 2d 488 (1944).

in section 1170 of the Civil Practice Act, the Legislature has conferred upon the court power, to modify its direction for the payment of alimony "as justice requires." The parties could not by contract divest the courts of that power. Hoops v. Hoops, 292 N.Y. 428 * * *

* * * No public policy embodied in the tax statutes is thwarted by the courts when they direct a defendant in a matrimonial action to pay to his wife for her support * * * a sum commensurate with his financial ability to pay and sufficient to furnish proper support after taxes are paid. Justice requires that the amount of alimony should be measured by that standard both when the judgment is granted and when application is made for its modification.

*Kraunz* v. *Kraunz*, 293 N.Y. 152, 56 N.E. 2d 90, 91, 92 (1944).

Nor is there here any question as to the reasonableness of the amounts that were actually paid without the compulsion of a written agreement or decree. The parties have stipulated that the sums paid were not excessive in the light of the circumstances of the parties and we have accordingly so found.

In short, in holding that decedent did not make the gifts in controversy and without attempting to analyze any "donative intent," see

*Commissioner* v. *Duberstein*, 363 U.S. 278 (1960),[1] we think we need go no further than to say that, on this record, he did in fact receive full and adequate consideration in money or money's worth [2] for the transfers he made for the support of his divorced wife. As in *Herbert Jones, supra* at 1209, "the sufficiency of that consideration was a question of fact for determination in each case upon the evidence as to the value of the estate, the rights in which were released." The payments decedent made are shown by this record to have absolved him from an obligation in the equivalent pecuniary amount which the law would otherwise, and in principle did, impose upon him.

Whether for the few remaining months in 1954 and those in 1955, prior to decedent's death, the changed provisions of the 1954 Code [3] would call for any different conclusion, we need not decide. Petitioner has apparently taken the position that it does not contest the application of the gift tax to those brief periods, possibly for the reason that in neither year would the specified payments substantially exceed the statutory exclusions.[4] However that may be, any liability for gift tax to that limited extent can be adjusted in the recomputation. In all other respects, the deficiencies in gift tax are disapproved.

Since the sole reason for taxability of the 1954 and 1955 payments would be the change in the law, effective for the first time after August 16, 1954, it seems clear that neither for the few remaining months of that year nor the early ones of 1955 would the deficiency be due to other than reasonable cause. Under the circumstances, the additions to tax are disapproved.

*Decision will be entered under Rule 50.*

---

[1] In discussing the term "gift" as used in the income tax statute, the Supreme Court there said:

"The Government says that this 'intention' of the transferor cannot mean what the cases on the common-law concept of gift call 'donative intent.' With that we are in agreement, for our decisions fully support this."

[2] I.R.C. 1939.

SEC. 1002. TRANSFER FOR LESS THAN ADEQUATE AND FULL CONSIDERATION.

Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

[3] SEC. 2516. CERTAIN PROPERTY SETTLEMENTS.

Where husband and wife enter into a written agreement relative to their marital and property rights and divorce occurs within 2 years thereafter (whether or not such agreement is approved by the divorce decree), any transfers of property or interests in property made pursuant to such agreement—

(1) to either spouse in settlement of his or her marital or property rights, or

(2) to provide a reasonable allowance for the support of issue of the marriage during minority,

shall be deemed to be transfers made for a full and adequate consideration in money or money's worth.

[4] As to 1954, the payments made for August through December 1954 presumably did not exceed $600 a month for 5 months for a total of $3,000, which is the annual exclusion under sec. 2503(b), I.R.C. 1954. As to 1955, our findings of fact are that $600 monthly payments were made for January through June for a total of $3,600. Respondent's deficiency for 1955 is based upon net taxable gifts of the difference of $600.